## THE ILLINOIS STEEL COMPANY

*v.*

## TIMOTHY COFFEY.

*Opinion filed October 26, 1903—Rehearing denied December 4, 1903.*

1. FELLOW-SERVANTS—*when question of fellow-servants is one of law.* Whether the relation of fellow-servants exists is a question of law, where the facts upon which such relation depends are undisputed, and are so conclusive that all reasonable men must reach the same conclusion therefrom.

2. SAME—*when employees are fellow-servants.* Two "second helpers" working, respectively, on day and on night shifts in a foundry are fellow-servants, where each performs duties which endanger the other, which duties bring them together twice in each twenty-four hours, thereby enabling them to exercise a mutual influence upon each other promotive of proper caution for their safety.

3. SAME—*when master is not liable for servant's injury.* The master is not liable for an injury to one servant caused by the negligence of another if he was not negligent in employing the servant who caused the injury and the duties of the two servants are such as make them fellow-servants under the law.

*Illinois Steel Co.* v. *Coffey,* 107 Ill. App. 582, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

KEMPER K. KNAPP, for appellant:

Men doing the same work, though on different turns, are fellow-servants. *Anderson* v. *Mining Co.* 50 Pac. Rep. 815; *Bodwell* v. *Nashua Manf. Co.* 47 Atl. Rep. 613; *Railroad Co.* v. *Malaney,* 59 Ill. App. 114.

In order to constitute two servants fellow-servants it is not necessary that both be present at the time of the injury. *Lebanon Coal Ass.* v. *Zerwick,* 77 Ill. App. 486.

It is not necessary that there should be any personal acquaintance between them. *World's Columbian Exposition* v. *Lehigh,* 196 Ill. 612.

It is not necessary that they be associated together for any particular length of time, but the important thing

is, whether they are filling such positions in relation to each other as would naturally endanger each other, and as would suggest they might mutually contribute toward guarding against such dangers. *Railroad Co.* v. *Kneirim,* 152 Ill. 458; *Leeper* v. *Railroad Co.* 162 id. 215; *Railroad Co.* v. *Murphy,* 53 id. 336; *Klees* v. *Railroad Co.* 68 Ill. App. 244.

DAVID SULLIVAN, for appellee:

· Whether different servants of the same master are fellow-servants, within the legal signification of that term, is a question of fact to be determined by the jury from all the circumstances of each case. *Railroad Co.* v. *Swan,* 147 Ill. 429; *Duffy* v. *Kivilin,* 195 id. 634; *Coal Co.* v. *Schreiber,* 167 id. 547.

The definition of fellow-servants is a question of law. Whether a given case falls within that definition is a question of fact. *Railroad Co.* v. *Swan,* 147 Ill. 429; *Bridge Co.* v. *Walker,* 170 id. 550; *Railroad Co.* v. *Morgenstern,* 106 id. 220; *Duffy* v. *Kivilin,* 195 id. 634; *Springside Coal Co.* v. *Grogan,* 169 id. 50.

Drawing of the inferences of fact from facts proved were all questions of fact for the jury to pass upon and not for the court to decide. *McGregor* v. *Reid,* 178 Ill. 471.

The duty of the master to furnish and maintain a reasonably safe place is an absolute one and a duty that cannot be delegated, and the rule of non-liability on the part of the employer for the negligence of a fellow-servant has no application and is no excuse. *Railroad Co.* v. *Avery,* 109 Ill. 322; *Leonard* v. *Kinnare,* 174 id. 537; *Pullman Car Co.* v. *Laack,* 143 id. 263; *Railroad Co.* v. *Scanlan,* 170 id. 114; *Hess* v. *Rosenthal,* 160 id. 628.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In the circuit court of Cook county in an action on the case, the appellee recovered a judgment against the appellant company in the sum of $3000 for damages because of personal injuries alleged to have been received through the negligence of a servant of the company. This

is an appeal to bring into review that judgment and the judgment of affirmance thereof entered in the Appellate Court for the First District on an appeal.

In one of its departments the appellant company melts together pig iron and steel in open-hearth furnaces. At each of said furnaces is a channel with an opening at the bottom, being called a "tapping hole," through which the molten metal is drawn or let out of the furnace. In order to prevent the metal from coming out through the tapping hole during the process of melting it, this channel or tapping hole is filled with loam, dolomite and magnesite to the depth of about three feet or more before the pig iron and steel are placed in the furnace. When the melted metal or liquid is to be drawn from the furnace, this loam, dolomite and magnesite must be dug out of the channel or tapping hole in order to open a passage through which the molten metal may escape. This process is called "digging out the tapping hole," and is attended with danger if negligently performed or if the furnace or tapping hole has not been carefully and properly filled and tamped with the loam, dolomite and magnesite. These substances, to the depth of at least three feet, should occupy the space in the furnace between the bottom of the molten mass and the outlet of the tapping hole. The danger which attends the tapping of the furnace is, that the molten liquid will suddenly pour forth upon and burn the workman who is opening the hole. It is not safe to be nearer than eighteen feet to the tapping hole when the liquid mass is allowed to escape from the furnace. The workman charged with the duty of tapping the furnace digs away the loam, dolomite and magnesite until he can see the gases which issue from the molten steel and which are visible through about six inches of the packing substances. The presence of this gas apprises the workman that it is no longer safe for him to remove any more of the packing and he withdraws to a place of safety. Other workmen from a sheltered point

beneath the furnace insert an iron bar, about twenty feet in length, into the tapping hole and up into the furnace to the point where the gas is issuing, and thrust it forward into the molten mass in the furnace. The bar is then withdrawn and the melted iron and steel bursts out with great violence. The heat, flame and gas would seriously endanger any one who stood at or near the tapping hole. The appellee, an employee of the appellant company, charged with the duty of digging the packing out of the tapping hole of one of the furnaces, on the 29th day of December, 1899, while engaged in the discharge of that duty, was seriously burned by a sudden and unexpected outflow of the liquid metal, accompanied by flame and gases from the tapping hole. He had removed but about three inches of packing from the channel or tapping hole when the melted iron and steel broke through and burst out of the tapping hole, and the flames, gas and melted steel and iron flowed upon and burned him.

It was clear appellee's injury was the result of the careless and improper manner in which the loam, dolomite and magnesite had been packed in the tapping hole. This work had been performed by one George Swick, also an employee of the appellant company, and the ground of the appellee's right of recovery was, that the appellant company, as master, was legally liable to respond for the negligence of the said Swick. The appellant company insisted that upon the undisputed facts of the case it should be declared, as matter of law, that said Swick and the appellee were fellow-servants, and hence that the doctrine of *respondeat superior* did not apply. The trial court was asked, by a motion entered by the appellant company at the close of all the testimony, to declare, as matter of law, that the relation of fellow-servant existed between these employees and to instruct the jury to return a peremptory verdict for the appellant company. This motion the court denied, and the correctness of that ruling is assigned as for error in this court.

205—14

The work of melting the iron and steel together was continued both night and day in these furnaces and was performed by two forces of men. One of the forces went on duty at six o'clock P. M. and labored until six o'clock A. M., and the other force then returned and relieved them and remained on duty until six o'clock that evening, when they in turn were relieved by the other force of men returning to the work. One man on each force was called "second helper." The appellee was second helper of the force that went on duty at six o'clock in the evening and said George Swick was second helper of the other force. It was the duty of the second helper to open the tapping hole and let off the molten metal, and after that had been done to assist in cleaning the furnace, and then to re-pack the tapping hole with the loam and dolomite in order the furnace might be again filled with iron and steel to be melted. The first helper would put in the magnesite, and after the second helper had packed the loam and dolomite the iron and steel would be placed in the furnace and the work of melting it would begin. It required about twelve hours to pack the tapping hole thoroughly and melt the iron and steel, but the work was so arranged that the melted iron and steel was ready to be let out of the furnace at about the hour of three o'clock in the afternoon of each day and at the same hour of each night. Each second helper was therefore called upon, while opening the tapping hole, to remove the loam and dolomite which had been packed in by the second helper of the other force. Each second helper would therefore be placed in imminent danger by the negligence of the other in filling the tapping hole. Each force remained at the work about the furnace until the other force came to relieve them. These servants of the appellant company met regularly at the end of each twelve hours. The appellee testified: "I knew every man that was changed in the night or other turn during the six months I worked there. I will tell you the reason

why: They had to remain on the floor until I came in there to change with them." These second helpers, the safety of each of whom depended so greatly upon the care and diligence of the other, had therefore ample opportunity to exercise each upon the other an influence promotive of care and prudence in the matter of performing the work of packing the tapping hole of the furnace, upon the proper performance of which work depended the safety of each of them. The duties of the appellee and the said Swick were therefore such as brought them into habitual association and enabled each of them to exercise a mutual influence upon the other promotive of proper caution, to the end that neither might suffer injury by reason of the failure of the other to perform his work in a faithful and careful manner. The third count of the declaration alleged that Swick, the second helper of the day force, was incompetent and unfit to discharge the duties of that position, and that the appellant company had not used reasonable care in selecting him for such duty. But that position was abandoned because there was no proof produced in its support. Counsel for appellee in his brief says: "But the court took that question from the jury. * * * The jury knew that the charge of incompetency was withdrawn. The court told them so, counsel for appellant told them so, and appellee's counsel told them it was withdrawn or was out of the case."

The testimony touching the relation which existed between the appellee and Swick was without conflict, and all the facts from which that relation should be determined appeared without controversy. While it is generally a question of fact, to be determined by the jury under proper instructions, whether the relation of fellow-servant exists, yet when all the facts upon which the existence of such relation depends are made known without dispute or controversy, and are so conclusive that all reasonable men must reach the same conclusion therefrom, it becomes a question of law. (*Wabash Railway Co.*

v. *Brown,* 152 Ill. 484; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 id. 330; *Meyer* v. *Illinois Central Railroad Co.* 177 id. 591.) In *Joliet Steel Co.* v. *Shields,* 134 Ill. 209, we said: "The rule in this State is, where one servant is injured by the negligence of his fellow-servant, their duties being such as to bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution, and the master is guilty of no negligence in employing the servant causing the injury, the master is not liable,"—and cited many decisions in support thereof. The case came again before this court and the doctrine of the decision was re-affirmed. (*Joliet Steel Co.* v. *Shields,* 146 Ill. 603.) The same principle was afterwards announced in *Chicago and Eastern Illinois Railroad Co.* v. *Kneirim,* 152 Ill. 458, and also in other cases.

The appellee and said Swick were servants of the same master. The master was not guilty of any lack of ordinary care in selecting and employing Swick. In doing the work each of them was liable to be placed in great peril by the negligence of the other. Their duties brought them together at regular intervals twice in each twenty-four hours, at which times they each had opportunity to impress upon the other the necessity of care, and to exercise a mutual influence, each upon the other, promotive of proper caution and faithfulness in the performance of the work. The relation between them was that of fellow-servants, and the common master was not liable to respond to either of them in damages for an injury arising because of the negligence of the other.

It was error to overrule the motion to direct the jury to peremptorily return a verdict for the appellant company. Because of that error the judgment of the circuit court and that of the Appellate Court are each reversed. The cause will be remanded to the circuit court for such further proceedings as to law and justice shall appertain.

*Reversed and remanded.*