## THE ILLINOIS THIRD VEIN COAL COMPANY

### *v.*

### TELESFERO CIONI.

*Opinion filed June 23, 1905.*

1. MASTER AND SERVANT—*servant does not assume risk of negligence of employees not his fellow-servants.* A servant does not assume, as incident to his employment, the risk of the negligence of employees of the same master who are not fellow-servants.

2. SAME—*bottom cager in mine is not necessarily a fellow-servant of a miner.* The bottom cager in a coal mine is not necessarily and as a matter of law a fellow-servant of the miners using the cage or elevator in going to and from their work.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding.

This is an appeal from a judgment of the Appellate Court, affirming a judgment of the circuit court of Bureau county, entered upon the verdict of a jury in an action on the case originating in that court at the suit of appellee, plaintiff below. The amount of the verdict and judgment was $3000.00.

On November 13, 1902, the appellant company was operating a coal mine. The shaft was from 468 to 470 feet deep. Appellant's employes were lowered into and lifted out of the mine on a double-deck elevator, or cage, by means of a cable, one end of which was attached thereto, and the other end to a drum in the hoisting engine room. The cage or elevator was operated by the engineer with one man at the bottom of the shaft in the mine known at the bottom cager, and another man at the top of the shaft known as the top cager. On the day above named appellee, with seven other coal miners in the employ of the appellant company at its said coal mine in the

village of Ladd in Bureau county, was lowered into said coal mine after having reported for work to the top cager at about half-past six or seven o'clock in the morning. The men were so lowered into the mine by the top cager on the lower deck of the cage. The cage stopped at the bottom of the mine, at the landing place for the miners to get off the deck; several of the miners stepped off, and, while appellee was in the act of stepping off the deck, the cage, which weighed some three tons or more, fell some six feet into the sump, and appellee's arm was cut and so crushed that it had to be amputated.

The abstract, in violation of the rule of this court, furnishes no information as to the contents of the declaration, but on reference to the record it is found that the declaration consists of three counts. The first count alleges, in substance, that the appellant "carelessly and negligently failed and neglected to hold its cage a reasonable length of time to enable the plaintiff to safely alight therefrom." The second count alleges, in substance, that the appellant "negligently maintained for the use of its servants defective and unsafe appliances to stop and hold for a reasonable time said cage, upon which the plaintiff and said other laborers were then and there being lowered into said mine;" and "carelessly and negligently operated a defective and unsafe cage, upon which the plaintiff was then and there being lowered into the said coal mine to labor for said defendant." The third count alleges, in substance, that the appellant "knowingly and negligently failed to provide its said hoisting engine with a good and sufficient brake on said drum, so adjusted that it could be operated by the engineer without leaving his post at the levers; and the defendant knowingly and negligently failed to set and apply any brake to and on said drum at the time when said cage arrived at the bottom of said mine as aforesaid."

In stating the facts of the case in their opinion the Appellate Court say: "The cage was controlled at the bottom of the shaft by John Baxter, who was in the employ of the

defendant as bottom cager. The cage was double-decked. When the coal miners went to work, they entered the cage at the top, and were then lowered by the operation of a steam engine at the top, controlled by an engineer acting pursuant to signals from the top cager. If the men were on the bottom floor of the cage, it was the duty of the bottom cager to raise a lever at his post of duty by which lever stops were thrown out into the shaft, upon which stops the cage was to rest while the men alighted from the lower deck of the cage. It was necessary that this lever should be held in that position till the men alighted. If the men were on the upper deck of the cage, the bottom cager did not touch the lever, but the lower part of the cage descended into a pit below the landing place and stopped upon stationary cage-rests there provided about six feet below the landing. If, while the lower deck stood at the landing, the lever was permitted to fall, the stops would no longer remain under the cage, and the cage would drop down till it came upon the rests, as the upper deck reached the landing. The record shows clearly that it was not only the bottom cager's duty to raise the lever, and thereby put the stops into the shaft, and keep them there till the cage rested on them and stopped, but also to keep the stops there till the men on the lower deck got off the cage. On the morning in question ten or twelve miners, including plaintiff, entered the lower deck of the cage and were lowered to the bottom, and Baxter raised the lever, but, instead of holding it in place with his hands, he put a stick of wood under it, and the cage rested a short time on the stops. Then it seems the cage raised up slightly, and, Baxter not having hold of the lever, the temporary release of the weight on the stops caused the stick to fall out, the lever to fall, and the stops to fall back from the shaft, and the cage, which weighed three tons or more, fell quickly to the rests below. Plaintiff was at that instant in the act of stepping off the cage. He remained inside and went down with the cage, but his arm was caught between the cage and the side of the shaft, and was broken."

A. R. Greenwood, and Geo. S. Skinner, for appellant.

Watts A. Johnson, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

At the close of the plaintiff's evidence the appellant company asked of the court a written instruction, instructing the jury that the evidence in the case was not sufficient to maintain appellee's case, and that the jury were therefore instructed to find the issues joined in favor of the appellant. This instruction was refused. Again, at the close of all the testimony the appellant asked the court to give the same instruction in writing, which was refused. Exceptions were taken to the action of the court in refusing thus to peremptorily instruct the jury to find for the appellant, and the chief complaint of the appellant is that the court so refused to instruct the jury.

As has often been said by this court in reference to this class of cases, the question, whether the court erred in refusing to instruct the jury to find for the defendant below depends upon the further question, whether there is any evidence tending to support the cause of action. In order to entitle the appellee to recover damages, it was necessary for him to show that, at the time of the accident, he was in the exercise of ordinary care for his own safety, and that the appellant company was guilty of the negligence, which caused the injury.

There was evidence, tending to show that the appellee was in the exercise of ordinary care for his own safety when the injury occurred. The ground, upon which it is alleged that he was guilty of contributory negligence, is the charge that he did not remain on the cage until it stopped in the usual way and at the proper place, but that he attempted to get off the cage while it was still in motion. This charge of contributory negligence is based upon some of the testimony,

which tends to show that the cage did not stop at all, but that, upon striking upon the stops, it instantly bounded up, and, the stops falling back, went to the bottom of the hole. There is, however, other evidence to the effect that the cage did come to a complete stop, and that several men, who were ahead of appellee, alighted while it stood still. The stopping of the cage at the proper landing place at the bottom of the mine was the only signal, under the custom which prevailed in that mine at that time, for the coal diggers to get off the cage to go to their work of digging coal. This signal was given, and several of the coal miners had stepped off the cage, as they had the right to do, and as it was their custom to do. Appellee waited his turn, and, when his turn came, he attempted to get off, and, in so doing, without any fault on his part and without any notice or warning so far as we are able to discover from the evidence, the cage was dropped into the sump, and he lost his arm. The evidence tends to show that appellee was rightfully upon appellant's elevator, having been invited or permitted to go upon the same by the top cager for the purpose of descending into the mine to work. His duty was that of digging coal, and nothing else. It was the duty of the engineer, and of the top and bottom cagers, to have the exclusive control and management of the cage, or elevator, for appellant. Appellee was an Italian, and did not understand the English language, and the evidence tends to show that he knew nothing about the running of the cage and the appliances used for stopping or holding the same. The evidence also tends to show that he not only knew nothing about the duties of the bottom cager, but did not know the bottom cager, Baxter. If there was evidence tending to show that the appellee failed to exercise the ordinary care which the law required of him, there was also much more evidence which tended to show that he was not guilty of any contributory negligence. This was a question of fact for the jury to determine under the instructions of the court, and they have decided this question of fact against the appellant.

The court instructed the jury that, if they believed from the evidence that, on the morning of November 13, 1902, the appellee with other men was being lowered into appellant's coal mine upon a certain cage or elevator used for hoisting men out of said mine, or lowering men into the same, and that, when at or near the bottom of said mine, the appellee attempted to get off said cage when it was in motion, and did not wait for it to stop so that he could get off with safety, and, if they further believed from the evidence that in so doing the appellee was not in the exercise of ordinary care for his own safety, then he could not recover and the verdict should be for the appellant.

The evidence tends quite conclusively to show that the accident was caused by the carelessness or negligence of the bottom cager, whose name was Baxter. It was his duty, as such bottom cager, when the cage came down to the landing to throw in the stops, so that the cage could rest on them. He says himself in his testimony: "I was supposed to attend to levers and hold the stops out under the cages until the men were off and then give the signal; * * * didn't hold them out until the men got off the cage." The evidence tends to show that he raised the lever, which shoved out the stops under the cage, and thereby stopped it, and then, instead of holding the lever until the miners were all off the cage as it was his duty to do, he attempted to hold the lever in place by placing thereunder a stick of wood about four feet long, an appliance which had been used by the appellant for the stopping and holding of the cage for some time prior thereto. The evidence tends to show that this appliance was, as is alleged in the second count of the declaration, defective and unsafe, when used as a safeguard of human life and limb. The Appellate Court in their opinion say: "If Baxter had retained his hold upon the lever, the cage would not have fallen."

The act of April 18, 1899, in regard to coal mines provides that "every hoisting engine shall be provided with a

good and sufficient brake on the drum, so adjusted that it may be operated by the engineer without leaving his post at the levers." (4 Starr & Curt. Ann. Stat.—2d ed.—p. 847). In commenting upon a similar statute in *Beard* v. *Skeldon,* 113 Ill. 584, we said (p. 588) : "The manifest object in requiring a brake on the drum was as a protection to the life of the miner, in the cage ascending or descending, when at any time or for any cause, the machinery, used in raising or lowering the cage, should refuse to perform any of its proper functions. The brake is required to stop the cage whenever there may be danger, whether that danger arises from the giving out or breaking of machinery, or for some other cause." If, in the case at bar, appellant's engine was provided with a brake on the drum, the brake did not afford sufficient protection to appellee, because it was not so set or used as to hold the cage safely until he could get off when he reached the bottom of the mine.

As we understand the argument of counsel for appellant, his main contention is that, even if the accident did result from the negligence of the bottom cager, or the top cager, or the engineer, the latter were employes of the appellant, just as the appellee was an employe of appellant, and, therefore, were fellow-servants of appellee. The position insisted upon is that the bottom cager, whose negligence, as the evidence tends to show, was the cause of the injury, was a fellow-servant with the appellee, and, therefore, that the appellant, as the master, is not liable to appellee for the negligence of such fellow-servant.

We do not think that either the bottom, or top cager, or the engineer who operated this cage or elevator, was a fellow-servant with appellee. In *Joliet Steel Co.* v. *Shields,* 134 Ill. 209, it was said (p. 213) : "The rule in this State is, where one servant is injured by the negligence of his fellow-servant, their duties being such as to bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution, and the

master is guilty of no negligence in employing the servant causing the injury, the master is not liable." (See also *Chicago and Eastern Illinois Railroad Co.* v. *Kneirim*, 152 Ill. 458; *Illinois Steel Co.* v. *Coffey,* 205 id. 206). If this definition be applied to the facts in the case at bar, it cannot be said that appellee and appellant's cager, Baxter, were brought into habitual association, so that they might exercise a mutual influence upon each other promotive of proper caution. Appellee, who was a coal digger and could not speak English, knew nothing about running the elevator or its appliances, as has already been stated, and was not acquainted with Baxter, who spoke English, and not Italian. It is true that the servant not only assumes the ordinary risks incident to his employment, but also the dangers which are obvious and apparent. It is true that, when a servant enters the employment of the master, the ordinary risks of such employment, which he assumes, include the negligence of fellow-servants associated with him. But he does not assume the risk of the negligence of employes of the same master, who are not fellow-servants with him. (*Illinois Steel Co.* v. *Coffey,* 205 Ill. 206; *Chicago and Eastern Illinois Railroad Co.* v. *White,* 209 id. 124). In *Chicago and Eastern Illinois Railroad Co.* v. *White, supra,* we said (p. 132) : "A servant, however, does not assume the risk of a negligent manner of doing the work by other servants, who are not his fellow-servants, unless it is customary to do the work in that manner. The risk of such an act is not one of the usual or ordinary hazards of the employment." Nor can the duty of an employer to his employe to exercise reasonable and ordinary diligence in providing and keeping in repair reasonably safe machinery and appliances for the use of such employe, be delegated, so as to relieve the employer from liability because of the negligence of such employe in the discharge of such duty. (*Chicago and Eastern Illinois Railroad Co.* v. *Kneirim,* 152 Ill. 458; *Chicago, Burlington and Quincy Railroad Co.* v. *Avery,* 109 id. 314.)

In the case at bar, appellee was never called upon to operate the cage, and its operation was wholly outside of his duty. Its movement at the bottom was wholly in charge of the bottom cager, and we are of the opinion that appellee and the bottom cager were not fellow-servants. Appellee cannot be said to have assumed the risk of the negligence of Baxter, because he was in no way associated with him and was unacquainted with Baxter's duties.

While the question whether the relation of fellow-servants exists is a question of law where. all the facts upon which the existence of the relation depends are undisputed and so conclusive that all reasonable men must reach the same conclusion therefrom, yet, under other circumstances it is a question of fact to be determined by the jury under proper instructions. Here, the instructions on the part of both the plaintiff and defendant left it to the jury to determine whether or not appellee and the bottom cager, Baxter, were fellow-servants. In instruction numbered 7 given for the appellant, and at its request, the court instructed the jury that if they believed from the evidence that the plaintiff and the bottom cager were in the employ of defendant, and that the plaintiff was injured while exercising ordinary care for his own safety, solely through the negligence of the bottom cager, and that the duties of the plaintiff and the bottom cager were such that they were directly co-operating in the particular business on hand, or that their usual duties were such as to bring them into habitual. association, so that they might exercise a mutual influence on each other promotive of proper caution, then the defendant was not liable for the· injury complained of. Instruction numbered 6, given for the appellant at its request, instructed the jury that the plaintiff, upon entering the employment of the defendant, assumed the natural and ordinary risks· of, and incident to, the business in which he was engaged, and that the defendant was not liable for injuries sustained by him, if the jury believed from the evidence that the injury was caused by the act of a fel-

low-servant, as defined in another instruction, or that it was occasioned because of his own want of ordinary care for his own safety. Appellant thus, by instructions asked by it, treated the question as a question of fact to be determined by the jury, and, so far as we are concerned, that question of fact is settled by the judgments of the lower courts.

A similar question to that here involved arose in the recent case of *Spring Valley Coal Co. v. Patting*, 210 Ill. 342, where it was held that the hoisting engineer at a mine is not a fellow-servant with the miners with respect to the operation of the cages, in which they go to and from their work, where their respective duties do not bring them into association with each other, nor in any manner require them to act or co-operate with each other, their duties being entirely disconnected; and it was there said (p. 352) : "The appellee was not acquainted with the engineer, and was forbidden, as were all other miners, access to the engine room. The duties of the engineer were to operate, by means of the engines under his control, the moving of the cage up and down the shaft upon which the men were carried to and from their work in the mine, and upon which empty cars were sent into the mine and loaded cars drawn up to the surface of the ground, and to control the brake, which regulated the speed of the cage as it ascended or descended in the shaft. His action in raising and lowering the cage was controlled by signals, given him by a man, who was stationed at the top, and another, who was stationed at the bottom of the shaft, while the duty of the appellee was to mine coal in the mine. The duties of the two men never brought them together in the discharge of their respective duties. So far as appears they never met. Indeed, their duties were as disconnected as if they were employed by different masters and performed their labors in places having no connection whatever with each other. The respective duties of the appellee and said engineer did not bring them into association with each other and did not in any manner require them to act or co-operate

with each other. In view of their duties and relations to each other, within the rule announced in this State, the facts being undisputed, we think the court properly refused to submit to the jury the question whether or not the relation of fellow-servants existed between them."

In the case at bar, the court did not go so far as it went in *Spring Valley Coal Co.* v. *Patting, supra,* because in the latter case the relation of fellow-servants was held as a matter of law not to exist, while in the case at bar the question was submitted as a question of fact to be determined by the jury.

We see no good reason for 'reversing the judgments of the lower courts in this case.

Accordingly, the judgment of the Appellate Court affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*