# William Lawton, Appellee, v. The Oglesby Coal Company, Appellant.

## Gen. No. 5122.

1. MASTER AND SERVANT—*commands by vice-principal.* Where a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant, and all commands given by him within the scope of his authority are in law the commands of the master.

2. MASTER AND SERVANT—*what risks assumed; what not.* A servant not only assumes the ordinary risks incident to his employment, but also the dangers which are obvious and apparent. It is also true that when a servant enters the employment of the master, the ordinary risks of such employment which he assumes, include the negligence of fellow-servants associated with him; but he does not assume the risk of the negligence of employes of the same master who are not associated with him or who are not fellow-servants with him.

3. CONTRIBUTORY NEGLIGENCE—*when question of fact.* The questions of contributory negligence and assumed risk are ordinarily questions of fact to be determined by the jury. These questions are never presented to the court as questions of law when the evidence is conflicting or when, conceding the testimony on the part of the plaintiff to be true, with the inferences that may legitimately be drawn therefrom, reasonable men might differ upon the questions whether the injury was caused in consequence of the negligence of the servant or the servant had assumed the risk which was the proximate cause of his injury.

4. TRIAL—*remarks of counsel.* Remarks of counsel not warranted by the evidence if made in reply to what was said by opposing counsel, will not, ordinarily, constitute ground for reversal.

5. VERDICTS,—*when not excessive. Held,* in an action on the case for personal injuries that a verdict for $4,500 was not excessive where it appeared that the plaintiff at the time in question was of the age of 38 years and earned before he was injured from $730 to $780 per year, or from $2.35 to $2.50 per day; that as the result of the accident his hand was seriously injured and his earning capacity much impaired.

Lawton v. The Oglesby Coal Co., 154 Ill. App. 368.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** William Lawton, appellee, was a coal miner employed by the Oglesby Coal Company, appellant. For some time prior to May 26, 1906, the mine had been shut down and he had been doing various jobs for appellant about the works and elsewhere above ground. On the morning of May 26, 1906, at a little after seven o'clock, he was put at work with others helping to move a house for appellant. Two other houses had been previously moved but he had taken no part in that work except to help put timbers under them. They had been moved by rope or cable and tackle. The apparatus and appliances used in the moving of this house consisted of three trucks placed underneath it, two at each of the rear corners and one in the middle of the front. A chain ran from the front truck to each of the rear trucks. The front truck had a bolster and king-bolt arrangement, which allowed it to be turned from side to side by the tongue which extended from it out in front of the house. On the end of the tongue was a drum around which was coiled a rope extending to the front corners of the house with a wheel attachment to the drum allowing it to be turned and the rope wound up on one side and unwound on the other for the purpose of moving the tongue from one side to the other in steering. Underneath the tongue and near the place of its attachment to the truck there was attached a chain to the front truck which ran out a little beyond the end of the tongue and was there attached to the rear pulley wheel. The power was secured from a traction engine which could be started gradually and easily and run an inch or ten feet. About thirty inches from the ground, a steel cable five-eighths of an inch in thickness and 1,000 feet long, was attached to the engine

which ran back to the rear pulley wheel, around which it passed from the north to the south side, then ran out to the front pulley wheel and back again to the rear pulley wheel, where it was fastened to the iron frame or fork across the rear pulley wheel. To the other end of the same frame, the chain running from the front truck to the rear pulley wheel was attached. The front pulley wheel was attached to what was called the dead-man, which was made by burying a number of railroad ties lashed together with a chain, which was brought up out of the ground and attached to the fork or framework of the front pulley wheels. The pulley wheels were each three feet and three inches in diameter, made of iron, and had six or eight spokes each. Around the circumference was a groove one and a half inches deep in which the steel cable ran. This made the actual diameter of the wheel between the points of contact with the cable exactly three feet, and the circumference at the same place exactly nine and forty-two one-hundredths feet. The rim of the wheel in which the spokes were set, and in which this groove was made, was two and one-eighth inches deep. The frame or forks of the rear pulley wheel consisted of two pieces of iron about four inches wide and three-fourths of an inch thick, which ran across the center of the wheel, and were fastened together by bolts at the ends and through the center of the wheel. The bolt in the center was the axle for the wheel, and to the bolt on the rear end of the fork the cable was fastened which ran from the wheel back to the front truck. To the bolt on the front end of the fork was fastened the rear end of the steel cable. At the time of the accident the cable passed around the rear pulley from the south to the north side. The circumference of the rear pulley wheel traveled the same distance as the engine when the engine was pulling the house; and the house itself traveled one-third the distance traveled by the engine. The ground was not hard and it was necessary to place timbers underneath the trucks. Shortly

after appellee began work, the engine was started and made a short pull and was stopped because one of the timbers in front of the front roller had become displaced. Charles Haage, a practical house-mover, then in the employ of appellant and in charge of the work, and William Harrison and appellee set about replacing the timber. Appellee was directed by Haage to lift up the rear pulley wheel which he did by taking hold of the cable with his left hand within four inches of where it entered the pulley wheel groove on the south, and of one of the spokes on the north side of the wheel with his right hand, he standing on the east side of the wheel. He claims that while he was still lifting on the wheel, Haage, without warning him, gave the signal to the engineer to go ahead, and the engine started. Appellee's hand was caught between the cable and the rim of the wheel where the cable entered the groove on the south side, and passed around the circumference just a trifle more than one-quarter of the distance, nearly to his elbow. He attracted the attention of the other men, his hand was released, and he was taken to the hospital where three fingers and about half of the index finger, and a small part of the palm of the hand, were removed. He brought this suit to recover damages for the injuries so sustained. The original declaration contained two counts, and before the trial three counts were added. The court instructed the jury to find appellant not guilty under the first count of the original declaration and the three additional counts. The case was submitted to the jury on the second count of the original declaration which charged that appellant was engaged in moving a certain house, by means of certain appliances; that appellee was in the employ of appellant and engaged in helping to move the house; that it was the duty of appellant to so equip the engine, one of said appliances, that appellee would not be exposed to unnecessary danger in the performance of his work, and to see that said engine was not suddenly moved forward

while appellee was in danger of being injured; yet, disregarding its duty, appellant negligently caused said engine to be suddenly started forward, and thereby, while, in the exercise of due care, appellee was performing his duties, his left hand was caught and the fingers smashed, cut and bruised so that it became necessary to amputate them. At the close of all the evidence, the court overruled appellant's motion to exclude the evidence and refused its instruction directing the jury to find appellant not guilty. Appellee had a verdict for $4,500. A motion for a new trial was overruled, as was also a motion in arrest of judgment. Judgment was entered on the verdict and the company appeals.

DUNCAN, DOYLE & O'CONOR, for appellant.

THOMAS N. HASKINS and BROWNE & WILEY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

It is urged by appellant that appellee was injured by a risk he assumed under his contract of service. As appears from the evidence, Haage, a practical building mover, was, at the time of appellee's injury, in full charge of the work of moving the building. As such he was the vice-principal representing the master at that time and place. He gave the order to appellee to lift the wheel, and there was no danger in this work unless the engineer started the engine, which the evidence shows he would not do without a signal from Haage. There is proof that while appellee still had hold of the wheel, Haage, by waving his hand, gave the signal to start the engine, without warning appellee of his intention so to do. There was also some proof that Haage did give warning, but there is no proof that appellee saw the signal or heard the warning, and his testimony was that his position was such that he could

not see the signal, and that he did not hear any warning, and Haage testified on cross-examination that the house was moving before he gave the warning. "Where a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; and all commands given by him within the scope of his authority are in law the commands of the master." City of La Salle v. Kostka, 190 Ill. 141; Chicago & Alton R. R. Co. v. May, 108 Ill. 288; Wenona Coal Co. v. Holmquist, 152 Ill. 581; Mobile & Ohio R. R. Co. v. Godfrey, 155 Ill. 78; Fraser & Chalmers v. Schroeder, 163 Ill. 459; Illinois Steel Co. v. Schymanowski, 162 Ill. 447; Graver Tank Works v. O'Donnell, 191 Ill. 236. It is true that the servant not only assumes the ordinary risks incident to his employment, but also the dangers which are obvious and apparent. It is also true that, when a servant enters the employment of the master, the ordinary risks of such employments, which he assumes, include the negligence of fellow-servants associated with him. But he does not assume the risk of the negligence of employes of the same master who are not associated with him or who are not fellow-servants with him. Illinois Third Vein Coal Co. v. Cioni, 215 Ill. 583; Illinois Steel Co. v. Coffey, 205 Ill. 206; Chicago & Eastern Illinois Railroad Co. v. White, 209 Ill. 124. Whether appellee, in taking hold of the wheel in obedience to an order from Haage, the man in charge of the work, assumed the risk of injury which might result from the act of Haage, without warning appellee of what he was about to do, in causing the engine to be started, while he knew or ought to have known that appellee still had hold of the wheel, was a question of fact for the jury, and their finding thereon, in our opinion, is supported by the evidence.

It is claimed by appellant that it was contributory negligence for appellee to take hold of the cable in front of the wheel; that he could, with safety, have taken hold of the rim of the wheel where the cable was already upon it, or of the spokes. Whether appellee, in taking hold of the wheel as he did, was guilty of negligence which contributed to his injury, or whether he acted as a reasonably prudent person would do for his own safety under like circumstances; was also a question of fact for the jury; and they, in determining that question, had a right to consider that the engine was standing still; that appellee knew that Haage, who was in charge of the situation, and who had ordered him to take hold of the wheel and knew that he had hold of it, was standing by, and that it was only at his signal that the engineer would start the engine.

The questions of contributory negligence and assumed risk are ordinarily questions of fact to be determined by the jury. Those questions are never presented to the court as questions of law when the evidence is conflicting, as it is here, or when, conceding the testimony on the part of the plaintiff to be true, with the inferences that may legitimately be drawn therefrom, reasonable men might differ upon the questions whether the injury was caused in consequence of the negligence of the plaintiff or the plaintiff had assumed the risk which was the proximate cause of his injury. It clearly was for the jury, in view of the facts, to say whether the appellee so far contributed to his injury by his own negligence as to defeat his right to recover, and whether he assumed the risk of being injured when he entered upon the employment. We think the court did not err in declining to take the case from the jury.

It is urged that counsel for appellee, in his closing argument to the jury, made remarks not warranted by the evidence and prejudicial to the interest of appellant. An examination shows that much of the language complained of was used in reply to what was

said by counsel for appellant. The court sustained objections thereto, and we do not consider that the remarks were of such a character as to have influenced the jury to the prejudice of appellant.

It is urged that the damages are excessive. Appellee was thirty-eight years of age and earned, before he was injured, from $730 to $780 per year, or from $2.35 to $2.50 per day. It is apparent that with his hand in the condition disclosed by the evidence, his earning capacity is very much impaired. The amount of the judgment at the highest legal rate of interest would produce an income of but $315 per year.

In the absence of evidence that the jury were influenced by prejudice or passion, we do not feel disposed to lessen the amount of the judgment by ordering a remittitur.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*