## Thomas Heaney, Appellee, v. Wells Brothers Company, Appellant.

### Gen. No. 15,107.

1. MASTER AND SERVANT—*duty as to appliances.* It is the duty of the master to use reasonable diligence to supply and keep for the use of his servants reasonably safe appliances and tools. They must be such as are ordinarily sufficient for the purpose for which they are used, and such as, with reasonable care, can be used without more danger than is ordinarily incident to the business.

2. MASTER AND SERVANT—*duty as to safe place.* A master is required to use reasonable care in furnishing his employes with a reasonably safe place in which, and reasonably safe surroundings and appliances about which to work.

3. MASTER AND SERVANT—*who are fellow servants.* Servants doing like work but in different shifts are fellow servants and a workman engaged in one shift injured by the negligence of a workman of another shift cannot recover of the master who was not guilty of negligence.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and judgment here. Opinion filed January 6, 1911.

**Statement by the Court.** Appellee brought this action to recover for an injury to one of his eyes caused by the alleged negligence of the appellant.

It appears that appellant, a building contractor, had a contract for erecting a large building in Chicago for Mandel Brothers. The building was to rest on numerous concrete piers, which were filled into deep wells or caissons, from 5 to 10 feet in diameter, sunk in the ground from 85 to 125 feet to solid rock. The location of the holes being first prescribed by the contractor, workmen proceeded to make them, working in gangs of two or three workmen to each hole, and in shifts of eight hours, each shift carrying forward the work from the point where it was left by the preceding shift.

As the hole is sunk it is lined with lagging, which

consists of plank about 5 inches wide, 3 inches thick and 6 feet long, beveled on the edges,—with a, tongue and groove to fit together around the. hole. When the hole is about 5 feet deep the lagging is set in a circle therein, and iron rings are put on the inside near the top and bottom, respectively, to prevent the lagging from falling or being pressed in. The diggers then dig out from beneath the lagging, which is then struck on the top, by a man standing on the ground, to sink it down until the top of the circle of lagging is level with the surface of the ground. The previous shift had dug this hole to a depth of about 5 feet, had set the lagging around it, and put the iron rings in place; then, at about 4 o'clock P. M. on the day of the occurrence they were succeeded by the shift of which appellee was a member. Appellee had not previously seen this particular hole, nor the lagging surrounding it, though he had, for several years just preceding, been engaged in this kind of work, for appellant and other contractors. At 4 o'clock on the day in question appellee and his fellow workmen proceeded to continue the hole downward. Appellee, being in the well, dug out from underneath the lagging, and then directed the man on the surface to lower the lagging by striking on the upper end of it. After having gone partly around the circle of lagging in the process of pounding it down, the workmen struck a piece of lagging, which was afterwards found to have at or near its upper end a small knot, and the knot flew off and struck appellee in the eye, resulting in a serious injury. At the trial appellee introduced evidence to the effect that a wooden maul was ordinarily used to drive down lagging, but, it being out of order, a metal hammer was being used at the time of the accident.

On the first trial of the case the jury disagreed. On the second trial the jury rendered a verdict of $5,500, in favor of appellee, which the lower court set aside. On the third trial appellee recovered a ver-

dict of $8,500, of which, however, the court required a *remittitur* of $3,500, and entered judgment for $5,000, from which judgment appellant prayed an appeal to this court.

The declaration charged in substance, negligence on the part of the appellant in furnishing a piece of lagging which was defective, in not being sound, safe and proper lumber and not being adapted for the purpose for which it was being used, and having therein a knot or loose part at or near the upper part thereof, and in directing and causing other of its servants than the appellee to drive or pound upon such lagging, and in having work so done that it was necessary to pound and hammer upon the lagging, by means of all of which appellee, without fault or negligence on his part was injured by being struck in the eye by a certain part of the defective lagging so pounded upon.

One count of the declaration seems to include a charge against the appellant of furnishing defective lagging, coupled with a charge that the appellant negligently ordered appellee to work in the excavation.

KRAUS, ALSCHULER & HOLDEN, for appellant.

BRANDT & HOFFMANN, for appellee; OSCAR C. MILLER, of counsel.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Counsel have discussed several alleged errors in the trial below, but in the view we take of the matter, it will not be necessary to pass upon but one.

It is undoubtedly the duty of the master to use reasonable diligence to supply and keep for the use of his servants reasonably safe appliances and tools. They must be such as are ordinarily sufficient for the purpose for which they are used, and such as, with reasonable care, can be used without more danger than

is ordinarily incident to the business. It is also true, that a master is required to use reasonable care in furnishing his employes with a reasonably safe place in which, and reasonably safe surroundings and appliances about which to work.

The evidence establishes the fact that the lagging used was such as was ordinarily used for that purpose, and the setting of the lagging was simply one stage of the work which was performed by the gangs or shifts of men. Taking up the work where the previous shift had left it, the workmen were engaged in practically a continuous service. Appellee had seen and used lagging for such purposes on many similar jobs, and, though he had not seen this particular lagging, it had been set there by the shift next preceding his own, and he found it there when he came. If one end of the lagging contained the knot referred to, and such knot thereby rendered it unsafe to pound upon that end of the lagging (there being no evidence that the lagging was otherwise in any manner unfit for the use made of it), it is clear that if the previous shift of workmen had put in that piece of lagging the other end up, the injury would have been averted. In other words appellee was not injured because he was set to work in an unsafe place. His injury resulted from the pounding upon the knotty end of a piece of lagging, and if the knot constituted such a defect as that reasonable care would have required the lagging to have been used the other end up, the negligence was that of the employe in the previous shift who thus improperly placed the piece of lagging with the knotty end upward. This being so, we are compelled to find that appellant was not guilty of negligence by which the accident was caused, and, if there was negligence, it was the negligence of a fellow servant of appellee, and, therefore, that appellant was not liable. Illinois Steel Co. v. Coffey, 205 Ill. 206.

With the general policy of the doctrine of nonliabil-

ity of a master for the negligence of a fellow servant we have nothing to do; but it is the law of this State, which we are not at liberty to disregard.

The judgment is therefore reversed, and judgment entered here in favor of appellant.

*Reversed and judgment for appellant upon finding of facts.*