## Elizabeth Burke, Administratrix, Appellee, v. Toledo, Peoria & Western Railway Company, Appellant.

1. MASTER AND SERVANT, § 298*—*when station agent and brake man not fellow-servants.* A station agent and a brakeman on a freight train are not fellow-servants.

2. MASTER AND SERVANT, § 350*—*when risk of another servant's negligence not assumed.* The negligence of a station agent in placing baggage and express on the station platform in such close proximity to the tracks as to strike a brakeman riding on the step or stirrup of a box car, while engaged in his duties in connection with switching cars, is not a risk assumed by such brakeman.

3. MASTER AND SERVANT, § 753*—*when contributory negligence a question for jury.* In an action to recover for the death of a brakeman caused by his being struck by baggage and express trucks standing on the station platform while he was riding on the stirrup or step of a passing box car engaged in his duties in connection with switching cars, where there is no evidence tending to show that deceased had any knowledge that the trucks were on the platform, or that they were too close to permit him to pass, the question of his contributory negligence is for the jury.

4. MASTER AND SERVANT, § 485*—*how rule of railroad to be construed.* Where a railroad company's rule provides that "an inferior train must keep at least five minutes off the time of a superior

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

train in the same direction, and must be clear at the time the superior train is due to leave the last station in the rear where time is shown," the word "time" cannot be construed as meaning the schedule time named in the time cards for the arrival and departure of trains, but as referring to the actual time when the trains arrive and depart.

5. MASTER AND SERVANT, § 757*—*when contributory negligence a question for jury.* In an action to recover for the death of a railroad brakeman while employed by defendant railroad company, where defendant contends that deceased was guilty of contributory negligence as a matter of law in violating its rule requiring the tracks to be cleared for trains having the right of way, the burden of showing the violation is on defendant, and where the evidence in regard to the violation is conflicting, the question is one for the jury under proper instructions.

6. MASTER AND SERVANT, § 805*—*when instruction defining assumption of risk not erroneous.* In an action to recover for the death of a brakeman killed by being struck by a truck near the track while in the performance of his duties in the employ of defendant Railroad Company, it is not error to instruct that the servant does not assume "risks of the master's own negligence," in an instruction defining the risks which a servant assumes, where there is no evidence that deceased knew that the truck had been placed on the platform, nor that it had been placed so near the track as to menace his safety, and where it cannot be said as a matter of law that he had equal opportunity with the master of knowing its position, but his knowledge and of the danger therefrom are denied in the declaration and the jury are instructed to find defendant not guilty if they believe from the evidence that the truck was in plain view and could have been seen by deceased in the exercise of ordinary care and caution, or if he had an equal opportunity with defendant of ascertaining the location of the truck.

Appeal from the Circuit Court of Tazewell county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 16, 1914. Rehearing denied November 6, 1914. *Certiorari* allowed by Supreme Court.

STEVENS, MILLER & ELLIOTT and GEORGE C. RIDER, for appellant.

JESSE BLACK, JR., for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Eldredge delivered the opinion of the court.

Appellee recovered a judgment against appellant for seventy-five hundred dollars in an action on the case for damages for the death of her intestate by reason of the negligence of appellant. The declaration consists of two counts which are substantially the same. They aver, in substance, that on April 15, 1912, appellee's intestate was employed as a brakeman by defendant on a freight train; that it was the duty of defendant to furnish him with a reasonably safe place in which to work; that while he, under the direction of defendant, was doing his work of switching in the town of Gridley, the defendant, through its servants, recklessly, carelessly and negligently placed a certain truck loaded with merchandise on its platform at the station in close proximity to the railroad track where plaintiff was engaged in switching; that appellee's intestate had no notice or knowledge of said truck so negligently placed by defendant as aforesaid; that the placing of said truck in said position created a condition of great danger to plaintiff's intestate; that the placing of said truck as aforesaid created a risk and danger of employment which plaintiff's intestate did not assume; that by reason thereof appellee's intestate was struck by said truck and thrown from the side of a freight car and killed.

The tracks of appellant run through Gridley in an easterly and westerly direction. The station at Gridley is on the north side of the main track. East of the station a switch track branches off from the main track and runs in a northeasterly direction. This track is called the "new" or "passing" track. East of the station there is also another switch track branching off from the main track which runs in a southwesterly direction, and from this switch track another switch track branches off running also in a southwesterly direction. South of the depot and a little east

therefrom is an elevator. The freight train on which appellee was employed as brakeman was known as "Number 23" and arrived at the station of Gridley between 11:45 A. M. and noon. It pulled up in front of the depot and unloaded freight consigned to that station. The deceased was known as the "swing" brakeman. After the conductor receives the switching orders he delivers them to the "swing" brakeman who directs the switching in accordance therewith. A passenger train known as "Number 7" coming from the east was due at Gridley at 12:19 P. M. The freight train did some switching west of the depot and then proceeded eastward onto the passing track east of the station. The switch crew then cut out four cars which were to be delivered to the elevator, and while this was being done the station agent and his assistant wheeled out onto the platform two trucks, one of which was loaded with egg cases. These trucks were placed within a few inches of the edge of the platform for the purpose of delivering express and baggage to the passenger train and to receive the express and baggage to be delivered therefrom at said station. There is evidence tending to show that a flagman was sent east along the main track and that thereupon deceased and another brakeman with the engine and four cars proceeded westward onto the main track for the purpose of delivering the cars to the elevator, which was located on the switch track south of the depot. The deceased, after turning the switch connecting the passing track with the main track, jumped on the side of the last of the four cars, which was a box car, and stood with his feet in the iron step or stirrup and grasping the handle bars. He was hanging on the side of the car which was towards the depot platform on which the trucks were standing. The passenger train at this time could be seen as it was about leaving Meadows, the first station east of Gridley and about four miles distant. The evidence tends to show that

deceased was looking towards the approaching passenger train, and also that the smoke and cinders from his engine were blowing in his direction from the west. There was evidence tending to show that the freight cars were running westward about twelve miles an hour when the car on which plaintiff was riding approached the depot platform. His body struck the trucks standing thereon and he was hurled from the car and killed.

The main contentions of appellant are that the deceased assumed the risk of striking the trucks because their dangerous proximity to the tracks was open and obvious and could readily have been seen by him, and that he was guilty of contributory negligence in failing to see said trucks, and for the violation of a certain rule of appellant.

The station agent and deceased were not fellow-servants, and the negligence of the station agent in placing said trucks in the manner described was not a risk and hazard assumed by deceased. *Illinois Third Vein Coal Co. v. Cioni,* 215 Ill. 583; *McCoy v. Chicago & A. R. Co.,* 188 Ill. App. 103. There is no evidence tending to show that he had any knowledge that these trucks were on the platform, or that they were too close to the rails to permit him to pass them without injury. Whether he was guilty of contributory negligence in failing to see the trucks or in riding on the car in the position he took, under all the facts and circumstances shown by the evidence, was a question of fact for the jury to determine.

It remains to be determined whether he was guilty of contributory negligence as a matter of law on account of violating the rule of the Company. Rule 89 is as follows:

"89. At meeting points between trains of different classes, the inferior train must take the siding and clear the superior train at least five minutes, and must pull into the siding when practicable. If necessary to

back in, the train must first be protected as prescribed by Rule 99, unless otherwise provided.

"An inferior train must keep at least five minutes off the time of a superior train in the same direction, and must be clear at the time the superior train is due to leave the last station in the rear where time is shown."

It is contended that the proper construction of rule 89 is that the word "time" used therein means "schedule" time and that schedule time means the time named in the time cards for the arrival and departure of trains. There was evidence tending to show that when a superior train was late an inferior train kept on with its work until it was necessary to clear the track for the superior train. In our opinion such custom is in accord with a reasonable construction of said rule, otherwise, to suggest a not uncommon occurrence, if the superior train should be an hour or several hours late the inferior train would have to take the siding five minutes before the schedule time for the arrival of the superior train and wait there inactive all that length of time until the superior train should have departed. We cannot seriously believe that any such construction has been observed or followed by the railroads in this country and there is no evidence to sustain it. We do not think this rule requires any construction, but means just what it says, that an inferior train must keep at least five minutes off the time of the superior train, and that the time of the superior train is the actual time when it arrives and departs from the given station. The evidence, moreover, does not conclusively show that the accident happened within five minutes of the arrival of the passenger train. The schedule time of the passenger train for its arrival at Gridley was 12:19. The station agent testifies that it was eight minutes late, though there is no certain evidence of the actual time when it did arrive. There was evidence tending to show that the deceased was informed that the passenger train was

eight minutes late. The evidence of the time when the accident happened varies according to different witnesses from 12:20 to 12:30. Whether deceased and his train could have proceeded westward the few hundred feet necessary to back in on the elevator siding five minutes before the actual arrival of the passenger train is not shown. The burden of proving the violation of the rule by deceased was upon appellant. We cannot say that the clear manifest weight of the evidence shows that the rule was violated by him. The agent knew that deceased was engaged in switching cars. He also knew that the four cars in question were to be placed on the elevator siding, as he himself had received the orders for the placing of said cars and delivered them to the conductor of the freight train. The question of fact as to whether the deceased was violating these rules at the time of his death was directly submitted to the jury by the fifth, sixth, seventh and eighth instructions given for appellant. Each one of these instructions direct the jury to find appellant not guilty if they should believe from the evidence that he was killed in consequence of his violation of this rule.

The errors assigned to the giving of instructions on behalf of appellee are most seriously argued with reference to instruction number 9. This instruction attempts to define what risks were assumed by deceased, and, among other things, says: "And you are further instructed that the law is that the servant does not assume risks that are unreasonable or extraordinary, nor risks that are extrinsic to the employment, *nor risks of the master's own negligence.*" The rule stated in the instruction that a servant does not assume the risks arising from the master's negligence has been sustained in many cases, and the same rule has been condemned in several cases. In the case of *Klofski v. Railroad Supply Co.*, 235 Ill. 146, the Court

points out the distinction in the application of this abstract rule in the two classes of cases and holds:

"The distinction between the two classes of cases is readily discernible when the cases themselves are carefully studied and analyzed. It will be found that the cases which exclude from the risks assumed by the servant such dangers as arise from the master's negli-·gence are cases involving a consideration of the usual and ordinary hazards of the employment which are assumed by the original contract of hiring, and that the other line of cases which hold that the servant may assume dangers arising from the master's negligence are cases where the assumption of the danger depended not upon the contract of hiring but upon the knowledge of the servant of the existence of the danger. If the servant has, or by the exercise of reasonable care would have, knowledge of the existence of a particular danger and continues in the employment without complaint he will be deemed to have assumed the danger; and in respect to such dangers it is wholly immaterial whether they arise from the negligence of the master or from other causes.   *   *   *   The master's negligence is not an ordinary and usual risk of the employment, hence the servant does not assume dangers arising therefrom by his contract of hiring, but the servant knowing of such negligence may assume the risk, and in such case he assumes it because he knows of it, and not because it has become an ordinary one."

There is no evidence in the case at bar that the deceased knew the truck had been placed upon the platform, nor that it had been placed so close to the rails as to make it a menace to his safety in the performance of his duties. It cannot be said as a matter of law that he had an equal opportunity with the master of knowing its position. In the *Klofski* case, *supra,* the Court further said:

"If appellant negligently employed an incompetent servant and set him to work with appellee, thereby exposing appellee to danger from the incompetency of ·such servant, such a danger is not one of the ordinary

and usual hazards of the employment which appellee assumed by his contract of hiring. If he assumed such danger at all, it would only be upon the supposition that he knew of such incompetency, and voluntarily, without protest, continued in such employment. Whether he had such knowledge or ought to have had such knowledge was a question of fact for the jury. Appellee's contention was that he had no such knowledge and had not sufficient opportunity to acquire it. Upon the assumption that the jury would adopt appellee's theory of the facts, he was entitled to have them instructed as to the rule of law applicable to his theory of the case."

In the case at bar the declaration alleged that deceased had no knowledge of the position of this truck on the platform nor the danger arising therefrom, and that he did not assume the risk thereof. In the *Klofski* case the Court continues:

"If on the other hand, as appellant contends, appellee had knowledge of the incompetency of his co-employee, or if, under the circumstances, by the exercise of ordinary care he ought to have had such knowledge, then appellant was entitled to have the jury instructed that appellee would assume the dangers arising from the known incompetency of the employee Scotty. The law as applicable to appellant's theory of the facts was fully presented to the jury by instructions 18, 19, 20 and 21 given on behalf of appellant. By these several instructions the jury were told, in various forms of language, that the servant assumed not only the ordinary and usual risks connected with his work, but also all extraordinary and unusual risks and dangers of which he had knowledge or by the exercise of reasonable care ought to have had. The instruction under consideration, when read in connection with the other instructions of a series, was not erroneous or misleading."

In the case under consideration, the third, fourth, twelfth and thirteenth instructions given on behalf of appellant directed the jury to find appellant not guilty if they believed from the evidence that the truck was

in plain view and could have been seen by deceased had he been in the exercise of ordinary care and caution for his own safety, or if he had an equal opportunity with appellant of ascertaining the location of the truck in question. These questions of fact were all properly submitted to the jury. Considering these instructions as a series the jury could not have been misled as to the application of the rule of assumed risk.

The criticisms of the first, second, fifth, seventh, eighth and twelfth instructions given on behalf of appellee we do not think are well founded. Twenty-four instructions were given on behalf of appellant and there was no error in the refusal of the two refused instructions offered by it.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*